Filed 6/3/14  P. v. Girk CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH MICHAEL GIRK,<br><br>　　　Defendant and Appellant. | A137179<br><br>(Lake County<br>Super. Ct. No. CR920278) |

## I. INTRODUCTION

In August 2012, a Lake County jury convicted appellant of two counts of burglary and two counts of petty theft.  A few days later, the court found the prosecution's allegations that appellant had suffered three prior strikes and had served three prior prison terms to be true and sentenced him to a prison term of 55 years to life.  Appellant argues that (1) there was substantial doubt as to whether he was competent to stand trial, and (2) the sentence authorized under California's Three Strikes law and imposed here constitutes cruel and unusual punishment under both the United States and California Constitutions.  We reject both contentions and affirm the judgment of conviction including the sentence imposed.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On the evening to September 6, 2009, Edward Fuchs and his fiancé (now wife, Sarah Fuchs) left their home with their daughter go to the Lake County Fair in Lakeport.  They left at about 4:30 p.m., returning at about 9:30 p.m.  When the family left the house, Fuchs closed the garage door, but stated that he did not know whether or not he had

1

locked the doors to their house. While the couple was getting ready for bed, he noticed that a closet light was on, although he did not recall turning it on before they had left. The next morning, his fiancé, Sarah, found a toe ring that belonged to her on their bed; she went to put it back in her jewelry box, but found that that entire box was missing. Later, the couple found that other items were missing from their home, including clothes and a firearm. They also found that there were feces on their bathroom floor and on a hand towel in that room.

The following day, September 7, 2009, a man named Jesse Monize called the Clearlake Police Department to report that he was witnessing a burglary being executed at the home of his neighbor, Christina Hill, who was not in her home at the time. The police arrived at that house, entered it, and found appellant in the process of stealing both jewelry and other property of Ms. Hill. Some of that property had already been placed in a black duffel bag which had been among the items stolen from the Fuchs's residence the preceding day. That bag also contained mail addressed to appellant and an identification card bearing his name as well as some of the clothing and jewelry taken from the Fuchs's residence.

On March 5, 2010, the Lake County District Attorney charged appellant with two counts of first degree burglary (Pen. Code, § 459),[1] two counts of petty theft with multiple priors (§ 666), and one count of receiving, concealing, etc., stolen property (§ 496, subd. (a)). The district attorney also alleged that appellant had suffered three prior strikes under Penal Code section 667, subdivisions (b) through (i), and had served three prior prison terms (§ 667.5, subd. (b)).

After a four-day jury trial in August 2012[2]—with the defense offering no testimony by witnesses—and less than an hour of deliberation, the jury convicted

---

[1] All further undesignated statutory references are to the Penal Code.

[2] As we explain below, the substantial delay between the filing of the charges against appellant and his trial was due to numerous motions filed before the trial court regarding appellant's mental condition.

2

appellant of the burglary and petty theft counts. The court dismissed the fifth count on the basis that it had been superseded by the conviction on the fourth count.

On October 19, 2012, the trial court denied appellant's motions to dismiss the prior strikes pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*), and sentenced him to 55 years to life in prison.

On November 16, 2012, appellant filed a timely notice of appeal.

## III. DISCUSSION

A.      *The Issue of Appellant's Competency Did Not Require a Separate Hearing.*

As noted above, appellant's first argument is that the trial court had before it "substantial evidence" which raised a reasonable doubt as to whether he was competent to stand trial but, notwithstanding that, "failed to initiate proceedings to determine" appellant's competence to stand trial. This failure, he argues, violated his right to due process. (Capitalization omitted from quotes.)

Some additional factual background is, as noted above, relevant here. First of all, when he was sentenced, appellant was 47 years old. According to a statement he made to his psychiatrist, he had only been out of prison for 14 days before his thefts at the Fuchs and Hill homes.

Four times after the information was filed charging appellant with the burglaries and petty thefts, his counsel moved to continue the trial date on the basis that additional time was needed to investigate his client's mental condition at the time of the two charged crimes and indeed, in one such motion, whether grounds existed for a plea of not guilty be reason of insanity. None of these motions was opposed by the prosecution and all four were granted.

After his trial (at which appellant presented no evidence at all) and his subsequent conviction, appellant filed a "Statement of Circumstances in Mitigation" requesting a reduced sentence on the basis that he was suffering from "severe mental problem[s]" and the crimes for which he had just been convicted were "committed because of a mental condition not amounting to a defense", and that he had previously (i.e., two weeks before

3

the charged offenses) been "released from prison without psychiatric medications," among other things.

Attached to this post-conviction motion was a three-plus page, single-space letter dated January 22, 2012, to appellant's counsel from a psychiatrist retained by that counsel to examine appellant, Dr. Douglas Rosoff, to which was attached a resume of Dr. Rosoff. Dr. Rosoff's evaluation of and conclusions concerning appellant's mental state are—and apparently were to the trial court—highly significant.

Dr. Rosoff noted, toward the beginning of his letter, that his examination "was conducted for the purpose of assessing [appellant's] mental state at the time of the commission of the offense and to furnish recommendations that may be helpful in formulating a defense strategy." In conducting this evaluation, Dr. Rosoff not only interviewed appellant—and clearly did so at length—but also reviewed the Clearlake Police Department Arrest Report and the 300-plus page State of California Prison Health Care Services Medical Records. His report also stated that appellant had been "apprised of the nature and purpose of the interview and cooperated voluntarily."

Dr. Rosoff's report noted that, although only 47 years old, appellant had already served "nearly 30 years of confinement within state prison" due to several convictions and "more than 52 separate parole violations." During those confinements, appellant had, the doctor noted, been prescribed several antidepressant and antipsychotic medications, and had even threatened to take his own life. Currently, the report continued, appellant had been given high dosages of the drug Sinequan which he tolerates "without side effects." Appellant suffered, Dr. Rosoff concluded, from "his addiction to illicit drugs, including methamphetamine and alcohol", an addiction which allegedly began when he was 13 years old. The report also stated that appellant had only completed the seventh grade of school and "ha[d] not obtained his GED or developed any vocational skills."

Regarding appellant's mental condition at the time of the charged offenses, Dr. Rosoff's report noted that, at that point in time, he had been free from prison only 14 days. The doctor then concluded: "A brief assessment of current trial competency

4

reflects *no present psychotic symptoms*, delusions or unmanageable behavioral problems causing him to be unable to continue with his criminal proceedings. He has an overall reasonable grasp of the nature and purpose of his criminal proceedings, his current criminal charges and although reluctant and avoidant in discussing the events surrounding his arrest, is able to furnish case relevant facts and cooperate with defense counsel. Despite learning disabilities, he is *presently competent to stand trial*. [¶] Regarding criminal responsibility, the defendant reports that he was heavily intoxicated at the time of the commission of the offense, but was aware of the nature of his conduct and the wrongfulness of his behavior. Based upon his own account of the offense he was not delusional, psychotic or criminally insane."

Based on these facts, appellant argues that there was a possibility that he was not mentally competent to stand trial, and that the trial court erred in not setting a competency hearing for him pursuant to section 1368.[3]

First of all, the law is clear that a criminal defendant is presumed to be competent. Section 1369, subdivision (f), states: " It shall be presumed that the defendant is mentally competent unless it is proved by a preponderance of the evidence that the defendant is mentally incompetent." This statute has been expressly declared valid by our Supreme Court. (See *People v. Medina* (1990) 51 Cal.3d 870, 881-886 (*Medina*); affd. (1992) 505 U.S. 437, 446, 453.)

Nonetheless, it is also clear that, when a trial court is presented with "substantial evidence of incompetence" of a criminal defendant, "due process requires that [it] conduct a full competency hearing." (*People v. Jones* (1991) 53 Cal.3d 1115, 1152 (*Jones*.)

---

[3] That statute provides, in relevant part: "(a) If, during the pendency of an action and prior to judgment, a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent." (§ 1368, subd. (a).)

5

That duty applies at all times " 'prior to judgment,' " including at or before the defendant's sentencing. (See § 1368, subd. (a); *Jones, supra,* 53 Cal.3d at p. 1153.)

Just three years ago, and in the process of reversing a two to one opinion of this court, our Supreme Court summarized the constitutional principles relating to the trial of an allegedly mentally incompetent defendant. In *People v. Ary* (2011) 51 Cal.4th 510, 517-518 (*Ary I*), a unanimous court wrote: "The due process clause of the federal Constitution's Fourteenth Amendment prohibits trying a criminal defendant who is mentally incompetent. [Citations.] A defendant is deemed competent to stand trial only if he ' "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" ' and ' "has a rational as well as factual understanding of the proceedings against him." ' [Citation.]

"When a trial court is presented with evidence that raises a reasonable doubt about a defendant's mental competence to stand trial, federal due process principles require that trial proceedings be suspended and a hearing be held to determine the defendant's competence. [Citations.] Only upon a determination that the defendant is mentally competent may the matter proceed to trial. [Citation.]

"California law reflects those constitutional requirements. Section 1368, in subdivision (a), requires a trial court to suspend criminal proceedings at any time 'prior to judgment' if the court reasonably doubts 'the mental competence of the defendant.' A defendant can create reasonable doubt through substantial evidence of mental incompetence, or the trial court can raise the issue on its own. [Citations.] Section 1369 provides for the appointment of psychiatrists as well as licensed psychologists to assess the defendant's mental competence (*id*., subd. (a)); and it allows both the defense and the prosecution to present evidence to either support or counter a claim of the defendant's mental incompetence to stand trial (*id*., subds. (b)-(d)).

"As to who has the burden of proof on the question of the defendant's mental competence, section 1369, subdivision (f), states in part: 'It shall be presumed that the defendant is mentally competent unless it is proved by a preponderance of the evidence that the defendant is mentally incompetent.' Thus, under California law, when a trial

6

court 'prior to judgment' (§ 1368, subd. (a)) suspends criminal proceedings and holds a mental competency hearing, it is the *defendant* who bears the burden of establishing lack of competence. [Citations.] In *Medina*, we rejected the defendant's contention that the 'presumption of competence and burden of proof allocation' set out in section 1369, subdivision (f), violated the federal Constitution's due process clause. Our decision was thereafter, in 1992, upheld by the United States Supreme Court. [Citation.]

"The high court in *Medina* pointed out that a state rule of criminal procedure ' "is not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " ' [Citations.] After surveying the allocation of the burden of proof in mental competence proceedings throughout the United States, the high court could discern 'no settled tradition on the proper allocation of the burden of proof in a proceeding to determine competence'; it therefore concluded that, in placing that burden on the defendant, California did not violate the federal Constitution's due process principles. [Citation.] In the words of the high court: 'Based on our review of the historical treatment of the burden of proof in competency proceedings, the operation of the challenged rule, and our precedents, we cannot say that the allocation of the burden of proof to a criminal defendant to prove incompetence "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." ' [Citation.]

"Thus, with respect to mental competency determinations made during the pendency of an action and prior to judgment (§ 1368, subd. (a)), the law is settled that placing on a criminal defendant the burden of proving incompetence to stand trial does not offend the federal Constitution's due process clause. [Citation.]"

These holdings in *Ary* are consistent with many other decisions of our Supreme Court. Thus, in *People v. Welch* (1999) 20 Cal.4th 701, 736-743 (*Welch*), the court ruled that a trial court's finding that a defendant was competent to stand trial was not undermined by its finding that the same defendant was not competent to waive the assistance of counsel. That case also makes clear that the standard of review of such a

determination is abuse of discretion. Thus, the *Welch* court held: "When the evidence casting doubt on an accused's present competence is less than substantial, the following rules govern the application of section 1368. It is within the discretion of the trial judge whether to order a competence hearing. When the trial court's declaration of a doubt is discretionary, it is clear that 'more is required to raise a doubt than mere bizarre actions [citation] or bizarre statements [citation] or statements of defense counsel that defendant is incapable of cooperating in his defense [citation] or psychiatric testimony that defendant is immature, dangerous, psychopathic, or homicidal or such diagnosis with little reference to defendant's ability to assist in his own defense [citation].' [Citation.]

In the present case, the circumstances noted by the court—that defendant and his counsel did not agree on which defense to employ, and that defendant had a paranoid distrust of the judicial system and had stated his counsel was in league with the prosecution, while suggesting the trial court *could have* ordered a hearing on competence to stand trial—do not establish that the trial court *abused its discretion* in failing to do so, justifying reversal on that basis." (*Welch, supra,* 20 Cal.4th at p. 742; see also *People v. Hayes* (1999) 21 Cal.4th 1211, 1280-1282 (*Hayes*); *People v. Halvorsen* (2007) 42 Cal.4th 379, 401.)

In *People v. Ramos* (2004) 34 Cal.4th 494, 507, the court cited and quoted from some of these same cases, including a specific statement that a trial court's "decision whether to grant a competency hearing is reviewed under an abuse of discretion standard." It then added, regarding such evidence: "Substantial evidence of incompetence may arise from separate sources, including the defendant's own behavior. For example, if a psychiatrist or psychologist 'who has had sufficient opportunity to examine the accused, states under oath with particularity that in his professional opinion the accused is, because of mental illness, incapable of understanding the purpose or nature of the criminal proceedings being taken against him or is incapable of assisting in his defense or cooperating with counsel, the substantial-evidence test is satisfied.' [Citation.] If a defendant presents merely 'a litany of facts, none of which actually related to his competence at the time of sentencing to understand the nature of that

proceeding or to rationally assist his counsel at that proceeding,' the evidence will be inadequate to support holding a competency hearing. [Citation.] In other words, a defendant must exhibit more than bizarre, paranoid behavior, strange words, or a preexisting psychiatric condition that has little bearing on the question of whether the defendant can assist his defense counsel. [Citations.]" (*Id.* at pp. 507-508.)

Under this law and these standards, we have no difficulty in concluding that the trial court did not err in sentencing appellant without conducting a competency hearing regarding him.

First of all, as noted above, in the trial court appellant presented no evidence at all, i.e., no witnesses and no documentary evidence in either the jury trial regarding the alleged offenses or the subsequent court trial regarding appellant's previous convictions.

Second, in his several motions to continue the trial, appellant's pleadings referred, and referred only to his mental state "at the time of the alleged offence." They did not, in any way purport to raise an issue of his competency during or after trial.

Third, the only actual evidence before the trial court regarding appellant's mental and emotional state was presented by the defense *at appellant's sentencing hearing* and successfully moved into evidence at that hearing. It was a pleading entitled "Statement of Circumstances in Mitigation" to which was attached the three-plus page, single-spaced report of Dr. Rosoff.

Appellant contends that, somehow, the Rosoff report aids his claim that there was, before the trial court, evidence of the lack of competency of appellant; we strongly disagree. Indeed, that report is absolutely to the contrary. After detailing appellant's apparent long-standing addition to both alcohol and various drugs, his numerous criminal convictions and his "nearly thirty years of confinement within state prison", Dr. Rosoff concluded, as set forth fully above, that appellant "is *presently competent to stand trial*" and that "[b]ased upon his own account of the offense he was not delusional, psychotic or criminally insane." That letter was written less than three months before the trial.

Appellant effectively concedes that Dr. Rosoff's report—again a report secured and introduced into evidence by his counsel—was the only professional opinion

9

introduced at trial regarding the issue of appellant's competency. Put another way, at both the jury trial regarding the charged offenses and the court trial regarding appellant's prior strikes, no contention of any sort was asserted by appellant regarding his lack of competency.

To be sure, the record, including Dr. Rosoff's report, makes clear that appellant was and had been an inveterate consumer of both alcohol and drugs, including marijuana, methamphetamine, and other "illicit drugs." But absolutely no evidence introduced by either party at either phase of the trial contradicts Dr. Rosoff's conclusion that, although appellant was "heavily intoxicated at the time of the commission of the offense," he was *not* "delusional, psychotic or criminally insane."

Appellant cites several California cases and, also, numerous federal authorities, which discuss the issue of the evidence necessary to require a court to order and conduct a competency hearing in criminal prosecutions. We will not attempt to discuss all of them, but a few set forth the California law regarding the showing that is necessary to demonstrate whether there is a relevant doubt about the competency of the defendant to stand trial. For example, in *Welch, supra,* 20 Cal.4th 701, the court rejected the contention that the defendant had produced adequate evidence of his lack of competence in his trial for first degree murder, concluding that "the trial court did not abuse its discretion in not declaring a doubt as to defendant's competence to stand trial." (*Id.* at p. 742.)

In so concluding, the court first cited section 1367 and then quoted section 1368 regarding the requisite requirements for finding a lack of competence on the part of a criminal defendant. (*Welch, supra,* 20 Cal.4th at p. 737.) It then stated: "In *People v. Stankewitz* (1982) 32 Cal.3d 80, 91-92, we observed that even though section 1368 is phrased in terms of whether a doubt arises in the mind of the trial judge and is then confirmed by defense counsel, as this court recognized in *People v. Pennington* (1967) 66 Cal.2d 508, 516-517, once the accused has come forward with *substantial evidence* of incompetence to stand trial, due process *requires* that a full competence hearing be held as a matter of right. (*Pate v. Robinson* (1966) 383 U.S. 375, 384-386.) In that event, the

trial judge has no discretion to exercise. [Citation.] As we also have noted, substantial evidence of incompetence is sufficient to require a full competence hearing *even* if the evidence is in conflict. [Citation.] We have concluded that where the substantial evidence test is satisfied and a full competence hearing is required but the trial court fails to hold one, the judgment must be reversed. [Citation.]

" 'Substantial evidence' has been defined as evidence that raises a reasonable doubt concerning the defendant's competence to stand trial. [Citations.] In *People v. Pennington, supra*, 66 Cal.2d at page 519, we enunciated the following standards regarding what would constitute substantial evidence of incompetence to stand trial: 'If a psychiatrist or qualified psychologist [citation], who has had sufficient opportunity to examine the accused, states under oath with particularity that in his professional opinion the accused is, because of mental illness, incapable of understanding the purpose or nature of the criminal proceedings being taken against him or is incapable of assisting in his defense or cooperating with counsel, the substantial-evidence test is satisfied.'

"In the present case, neither defendant nor defense counsel presented substantial evidence of defendant's incompetence to stand trial." (*Welch, supra,* 20 Cal.4th at pp. 737-738.)

Seven months later, the court reiterated these standards in a case involving a defendant who had a "prior acquittal of murder on grounds of insanity, past psychiatric treatment, a prior finding of incompetence to stand trial, his commitment to a mental institution in Oregon, and treatment with psychotropic medication," and held that "[n]one of this established present incompetence to stand trial." (*Hayes, supra,* 21 Cal.4th at p. 1281, fn. 30.)

More recently, the same court ruled that no substantial evidence had been presented concerning the defendant's possible incompetence. In *People v. Rogers* (2006) 39 Cal.4th 826, the court stated: "Defendant argues there was substantial evidence of incompetence in the guilt phase testimony demonstrating that he suffered from long-standing mental problems. All three defense mental health experts agreed defendant suffered some type of dissociative disorder—a 'a splitting off of [defendant's] mind' into

11

different directions—which possibly rose to the level of a multiple personality disorder. No medical expert, however, testified defendant was likely to dissociate during the trial. Rather, the testimony suggested defendant's dissociative states were triggered by traumatic events such as childhood sexual abuse or Clark's verbal abuse. Likewise no medical expert ever related defendant's alleged multiple personality disorder to any inability to understand the trial process or assist his attorneys." (*Id.* at pp. 848-849, fn. omitted.)

The *Rogers* court then continued: "In sum, defendant's 'history, statements and conduct did not approach the overwhelming indications of incompetence' present in *Drope* [*v. Missouri* (1975) 420 U.S. 162] and other cases. [Citations.] Considering all the evidence before the trial court, there was no substantial indication of incompetence requiring the trial court to declare a doubt and conduct a competence hearing. For the same reasons, defendant has not shown he was mentally absent from the trial in violation of his rights under the state or federal Constitutions or state statutory law. [Citations.]" (*Rogers, supra,* 39 Cal.4th at pp. 849-850, fn. omitted.)

In his briefs to us, appellant cites this court's unanimous decision in *People v. Ary* (2004) 118 Cal.App.4th 1016 (*Ary II*), a case in which we reversed a first degree murder conviction because there had been significant evidence presented of the defendant's mental retardation. Because of that, we remanded the case to the trial court with instructions to conduct a retrospective competency hearing. But appellant's reliance on our opinion in *Ary II* is strongly misplaced. As we specifically noted in that decision, at trial the defendant had presented the testimony of two psychologists regarding the defendant's "mental retardation." One of those experts relied on reports written by two other psychologists and, finally, even a psychologist presented by the prosecution conceded that the defendant was " 'mildly mentally retarded.' " (*Id.* at pp. 1021-1022.)[4]

---

[4] Appellant relies on scores of other cases, many of them federal, in support of his argument that a competency hearing was mandated here. However, we see no need to discuss or distinguish any more of them, because the key issue here is whether or not

12

No such evidence was presented by appellant here; to the contrary it was *appellant* that presented the evidence, via Dr. Rosoff, that he was "presently competent to stand trial." (Italics omitted.)

B.     *The Trial Court Did Not Err in Sentencing Appellant Under the Three Strikes Law.*

As noted above, in his information, the district attorney alleged that appellant had suffered three prior strikes under Penal Code section 667, subdivisions (b) through (i), and had served three prior prison terms. (§ 667.5, subd. (b).) And these felonies preceded the Fuchs and Hill burglaries, for which this jury also found appellant guilty, thus giving him a total of five strikes.

Before sentencing, defense counsel moved the court to strike these enhancements under section 1385, as such would be "in furtherance of justice." Such would, that counsel argued, be consistent with the law as set forth by our Supreme Court in *Romero, supra,* 13 Cal.4th 497.

That motion was argued to the trial court on October 19, 2012 and denied by it. In its denial, the court noted appellant's "unbroken chain of crimes and parole violations for the last 28 years" and specifically noted the extent of those offenses as per the record before it. Per the trial court, appellant fell "squarely within the spirit of the [Three Strikes] law."

As a consequence of this conclusion, and after denying appellant's *Romero* motion, it sentenced appellant to two consecutive 25 years to life terms for the Fuchs and Hill burglaries. The court also sentenced appellant to an additional five-year term under section 667, subdivision (a), for having suffered a prior "serious" felony conviction.[5]

Appellant makes three challenges to this sentence. The first two are that it violates both the United States Constitution's prohibition on cruel and unusual punishment and

---

there was substantial evidence of appellant's incompetence. As already noted, we are quite clear there was not.

[5] This conviction and sentence are not challenged in this appeal.

13

the California Constitution's similar provision. His third argument is that the trial court abused its discretion in denying his motion under *Romero*.

For several reasons, we reject all of these arguments. First of all, with regard to both of the constitutional claims of cruel and unusual punishment, neither was made to the trial court. We therefore agree with respondent that these arguments were forfeited. (See *People v. Kelley* (1997) 52 Cal.App.4th 568, 583; *People v. DeJesus* (1995) 38 Cal.App.4th 1, 27.)

We also reject appellant's argument that the sentence imposed on him violated the Eighth Amendment to the United States Constitution that prohibits the imposition of "cruel and unusual punishment."

In making this argument, appellant relies almost entirely on several *dissenting* opinions from the United States Supreme Court. Specifically, his counsel cites the dissenting opinions in *Rummel v. Estelle* (1980) 445 U.S. 263, *Ewing v. California* (2003) 538 U.S. 11, *Lockyer v. Andrade* (2003) 538 U.S. 63, and *Harmelin v. Michigan* (1991) 501 U.S. 957, to support his argument that, in the circumstances of his two most recent convictions, the imposition of the sentence imposed here, i.e., 55 years to life, constituted cruel and unusual punishment. Indeed, at one point in his opening brief's argument of this issue, appellant candidly concedes that his argument is largely based "on the opinion of the Rummel dissenters."

Fortunately, we need not review in any detail the bases of the arguments presented by appellant on this point or the Attorney General's responsive arguments. This is so because our own Supreme Court has, very recently, published an almost unanimous decision, *In re Coley* (2012) 55 Cal.4th 524 (*Coley*),[6] which both summarizes the U.S. Supreme Court's rulings on the impact of the Eighth Amendment on a criminal law

---

[6] In *Coley*, Justices Werdegar and Liu concurred with the majority opinion in all respects, except with regard to the right of a criminal defendant to a jury trial regarding the "triggering offense," which they suggested was required by *Apprendi v. New Jersey* (2000) 530 U.S. 466. But they both agreed that issue had been waived by the petitioner. (See *Coley, supra,* 55 Cal.4th at p. 562 (conc. opns. of Werdegar J. and Liu, J.).)

14

sentence, and explains why a sentence based on the Three Strikes law and the numerosity of prior criminal offenses committed by the sentenced defendant is usually valid under federal constitutional law. In *Coley*, the court affirmed the 25-year-to-life sentence of a person who had suffered many prior serious or violent felony convictions, but was now being prosecuted for failing to update his sex offender registration within the time period required by the relevant statute. The court summarized the holdings of the United States Supreme Court which were and are relevant to the constitutionality of the penalties mandated by the Three Strikes law thusly:

"Although it has always been uniformly accepted that the federal cruel and unusual punishment clause prohibits the infliction of certain modes of punishment (for example, inherently barbaric punishments such as 'punishments of torture' [citation], there has been some dispute, particularly outside the context of capital punishment, whether the provision also prohibits the imposition of punishment that is 'excessive' or 'disproportionate' in relation to the offense or offenses for which the punishment is imposed. Over the past two decades, several high court justices have expressed doubts whether the Eighth Amendment's cruel and unusual punishment clause was intended to grant courts *any* authority to evaluate the *length* of prison sentences enacted by legislative bodies to determine whether such sentences are excessive or disproportionate in light of the offense or offenses for which the sentences are imposed. [Citations.] A majority of the high court, however, has consistently rejected this limited view of the scope of the federal cruel and unusual punishment clause, and it is now firmly established that '[t]he concept of proportionality is central to the Eighth Amendment,' and that '[e]mbodied in the Constitution's ban on cruel and unusual punishments is the "precept of justice that punishment for crime should be graduated and proportioned to [the] offense." [Citation.]' [Citations.]" (*Coley, supra,* 55 Cal.4th at pp. 537-538.)

In concluding that there was no Eighth Amendment violation in the Three Strikes sentence imposed on the petitioner, the *Coley* court stated: "Furthermore, as the United States Supreme Court explained in *Ewing, supra*, 538 U.S. 11, in determining the gravity of petitioner's conduct in evaluating an Eighth Amendment challenge to a sentence

15

imposed under a recidivist sentencing statute, we must consider not only petitioner's triggering offense but also the nature and extent of petitioner's criminal history. (*Ewing, supra*, at p. 29 ['In weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of felony recidivism.'].) In light of the particularly heinous nature of petitioner's prior criminal activity . . ., petitioners present offense—reflecting a deliberate decision by petitioner to refuse to comply with an important legal obligation—may properly be viewed as an indicator of potentially significant future dangerousness. Taking into account both the circumstances of petitioner's triggering offense and petitioner's very serious criminal history, we conclude that the 25-year-to-life sentence imposed upon petitioner does not constitute cruel and unusual punishment in violation of the Eighth Amendment." (*Coley, supra,* 55 Cal.4th at p. 562; see also *People v. Mantanez* (2002) 98 Cal.App.4th 354, 358-367 (*Mantanez*).

We have no difficulty in concluding that this analysis applies here as well. The trial court had before it a defendant who had suffered three prior strikes under the Three Strikes law (§ 667, subd. (b)-(i)), had served three prior prison terms, all resulting in 30 years of prison confinement, and findings of over 50 parole violations by the time he was 47 years old. In the present case, he was convicted of two separate and distinct counts of first degree burglary, one committed on September 6, 2009, and the other the following day, and these were not the only similar convictions in appellant's record. According to the probation officer's report, he was convicted of possession of stolen property in 1985, of second degree burglary in 1988, of receiving stolen property in 1993, 2000, and 2006, and of first degree burglary in 2001.

Under these circumstances, we have no difficulty in concluding that the sentence imposed on appellant under the Three Strikes law was not cruel or unusual punishment under the United States Constitution.

We reach the same conclusion as regards this state's constitution. Article 1, section 17, of the California Constitution also precludes cruel and unusual punishment. Appellant contends that the sentence imposed on him also violates this provision.

16

Our colleagues in the Fourth District rejected the contentions of the defendant in *Mantanez* that the prison term imposed on him constituted cruel and unusual punishment under both the federal and state constitutions. That court noted: "It is precisely because of Mantanez's past conduct, which has included forcible entries into homes where residents are present, numerous narcotics offenses, and long-term refusal to take any steps whatsoever to overcome his addiction despite several opportunities, that the trial judge determined Mantanez was indeed, in light of his continued participation in not only addictive but larcenous acts, wholly within, rather than without, the category of persons intended to be incarcerated for long terms under the Three Strikes legislation.

"This punishment imposed in this case presents no 'exquisite rarity.' Further, Mantanez's argument rests upon a fundamentally false premise, which another court has well discussed: 'Appellant contends his sentence of 25 years to life constitutes cruel or unusual (or both) punishment under the federal and state Constitutions. [Citations.] We find no constitutional infirmity. [¶] The basic fallacy of appellant's argument lies in his failure to acknowledge that he "is not subject to a life sentence merely on the basis of his current offense but on the basis of his recidivist behavior. Recidivism in the commission of multiple felonies poses a manifest danger to society[,] justifying the imposition of longer sentences for subsequent offenses. [Citations.]" [Citation.]'

"In this case the trial court based its decision in large part on Mantanez's extensive criminal history. As of the time of the sentencing, Mantanez had accumulated numerous criminal convictions arising from a criminal career spanning 17 years. The probation report reflects at least 10 felony convictions and four separate prison terms before he committed his current felony offense. During his lengthy criminal history, Mantanez's grants of probation or parole were repeatedly violated. In short, the record demonstrates nearly four decades of criminal conduct, undeterred by repeated incarcerations and imprisonments. As such, it is clear that the sentence imposed was based not only on the nature of the current felony, but also on persistent recidivism demonstrated by this record." (*Mantanez, supra,* 98 Cal.App.4th at p. 366.)

We have no difficulty in concluding that the same principles apply here.

17

This leaves only the issue of whether the trial court erred in denying appellant's *Romero* motion to strike one or more of his prior strike convictions. We find that it did not.

First of all, as appellant concedes in his briefs to us, and as ample authority has made clear, our standard of review of the denial of a *Romero* motion, i.e., a motion brought under section 1385, is abuse of discretion. (See, e.g., *People v. Carmony* (2004) 33 Cal.4th 367, 375; *In re Large* (2007) 41 Cal.4th 538, 550.)

Appellant argues that there was such an abuse here, because neither of the later strikes, i.e., the burglaries of the Fuchs and Hill home on successive days in September 2009, constituted violent felonies, whereas the intent of the Three Strikes law was to increase the punishment for those committing violent crimes. Residential burglaries, he argues, do not constitute such. Additionally, he notes, is the relevance of his history of emotional and "mental illness" problems associated with his reliance on alcohol and drugs.

In one of its latest opinions addressing the Three Strikes law and when and to what extent a trial court may exercise its discretion in striking priors, our Supreme Court wrote in *People v. Wallace* (2004) 33 Cal.4th 738, 747-748: "This court emphasized in [*Romero, supra,*] 13 Cal.4th 497 that a 'court's discretion to strike prior felony conviction allegations in furtherance of justice is limited' and that exercise of such discretion requires 'strict compliance with section 1385[, subdivision] (a), and is subject to review for abuse.' (*Id.* at p. 530.) We explained that the trial court must give ' " 'consideration both [to] the constitutional rights of the defendant and the *interests of society represented by the People* in determining whether there should be a dismissal . . . .' " ' (*Ibid*.) We gave as examples of abuse of discretion the striking of a prior conviction 'solely "to accommodate judicial convenience or because of court congestion," ' or 'simply because a defendant pleads guilty,' or due to ' "personal antipathy for the effect that the three strikes law would have on [a] defendant," while ignoring "defendant's background," "the nature of his present offenses," and other "individualized considerations." ' (*Id*. at p. 531.)

"We clarified in *People v. Williams* [(1998)] 17 Cal.4th 148 (*Williams*) that the decision whether to strike a prior conviction allegation under the Three Strikes law requires the trial court to look 'within the scheme in question, as informed by generally applicable sentencing principles . . . .' (*Williams, supra*, 17 Cal.4th at p. 160.) We explained that 'no weight whatsoever may be given to factors extrinsic to the [Three Strikes] scheme' and that 'the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.]"

For several separate and distinct reasons, we reject appellant's contention that, under these principles of law, the trial court abused its discretion in not striking his prior felony convictions.

First of all, although the burglaries of September 6 and 7, 2009, did not constitute "violent" felonies, they clearly did constitute "serious" felonies under the express language of sections 460 and 1192.7, subd. (c)(18), because both involved an "inhabited dwelling house." Further, these were not the first first degree burglary convictions appellant suffered; he had been convicted in 2001 of the same crime, and sentenced to a prison term of eight years.

Second, appellant also had no less than three prior convictions for receiving stolen property and one for second degree burglary (in 1988), a felony which has, in several cases, been found to have constituted first degree burglary because, in fact, they were of "residential property." (See *People v. Johnson* (1989) 208 Cal.App.3d 19, 26; *People v. Garrett* (2001) 92 Cal.App.4th 1417, 1432-1434.)

Third is a point already noted, i.e., appellant's extended and recidivist criminal record. Per the probation report before the trial court, appellant had been convicted of no less than 18 offenses. These included one Health and Safety Code violation for being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a)),

19

seven Vehicle Code violations, mainly "DUI," and ten Penal Code violations, which included six felony convictions and four convictions for misdemeanors.

The trial court took all of this into account and gave a thorough recap of appellant's criminal history at the sentencing hearing of October 19, 2012. In considering appellant's *Romero* motion on that day, the court noted that it was "required to follow the law in making [the] determination" to strike any of the previous felony convictions. It stated that , among the "number of factors to consider" was appellant's "current convictions. He has not one but two current serious felony convictions for which he's being sentenced," and both were serious felonies because they were "residential burglary."

The court then continued: "His prior felonies. He has three prior convictions for residential burglary. So, in effect this is—current cases are strikes four and five. This isn't strike three. This is strike five. The other three were prosecuted together as one case. But . . . it's three different crimes, three different victims, three different homes burglarized on three different dates. It could be seen, as has been argued in [defense counsel's] briefs, that this reflects a single period of aberrant behavior because they all happened in a relatively short period of time. But to make that determination, the Court really needs to look at his entire history, his entire record, to see whether it was just one bad period in his life. That history is laid out in the probation department's report beginning at page 3."

The trial court then proceeded to recapitulate what that report revealed, starting with appellant's three misdemeanor convictions in 1984 and 1985 and then going, year by year, to his subsequent convictions, his eight violations of parole, and then his "three strikes . . . [for] three convictions for residential burglary, first degree" in 2001. It then noted that after his release, he was found in violation of his parole on six separate occasions.

The trial court then concluded: "This is a long and continuous criminal career. There's no other way to describe that. . . . [¶] The Rule of Court factors also weigh into this. Obviously, his prior convictions are numerous. His prior performance on probation

20

and parole have been extremely poor. His prospects for a stable life in light of the reality of his last 28 years of criminal conduct seems very limited. It also concerns me that I am now sentencing him on residential burglaries, the exact same crime for which he had strike convictions. . . . It's clear that he has not learned from his prior judicial experiences. . . . [¶] Given all of the above, I do not find that the defendant is outside the spirit of the Three Strikes Law. In fact, I think he fits squarely within the spirit of the law. The motion to dismiss prior strikes is denied. I will sentence him under the Three Strikes Law."

Interestingly, these statements of the trial court, and the sentence it imposed based on them, were uttered two months after our Supreme Court, in *Coley*, made clear—doing so unanimously—that it remained strongly in favor of affirming a trial court's denial, and especially a reasoned denial such as that involved here. It stated: "Under section 1385, although a trial court is required to state on the record its reasons for striking a prior conviction [citation], there is no similar statutory requirement of an on-the-record statement of reasons when a court declines to strike a prior. [Citation.] But when, as in the present case, a trial court explicitly explains its reasons for declining to strike prior convictions for sentencing purposes, it is appropriate to rely upon the trial court's reasons and findings in evaluating petitioner's Eighth Amendment claim. [Citations.] . . . [¶] . . . Because the trial court found that petitioner deliberately failed to register as a sex offender even though he knew he had an obligation to do so, petitioner's triggering offense demonstrated that, notwithstanding the significant punishment that he had incurred as a result of his prior serious and violent felony convictions, petitioner was still intentionally unwilling to comply with important legal requirements prescribed by the state's criminal laws. As a consequence, petitioner's current criminal conduct and conviction clearly bore a rational and substantial relationship to the antirecidivist purposes of the Three Strikes law." (*Coley, supra,* 55 Cal.4th at pp. 560-562.)

We have no difficulty in concluding that the same result should follow here, and for essentially the same reasons.

21

## IV. DISPOSITION

The judgment, including the sentence imposed, is affirmed.

_____
Haerle, Acting P.J.

We concur:


_____
Richman, J.


_____
Brick, J.*


* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

22